1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kaori Stearney,<br><br>        Plaintiff,<br><br>v.<br><br>United States of America,<br><br>        Defendant. | No. CV-16-08060-PCT-DGC<br><br>**ORDER** |

Plaintiff Kaori Stearney, guardian of the estate of R.H. and administrator of the estate of Yuki Hirayama, has sued the United States, alleging that the Navajo Nation Police Department caused a drunk driver to crash into the Hirayama family's van and kill three members of the family. Doc. 59. Plaintiff brings claims for wrongful death, negligence, and negligent infliction of emotional distress under the Federal Tort Claims Act ("FTCA"). *Id.* Defendant has filed a motion for summary judgment, and Plaintiff moves to exclude one of Defendant's experts. Docs. 92, 106. The motions are fully briefed and oral argument will not aid the Court's decision. Fed. R. Civ. P. 78(b); LRCiv 7.2(f). The Court will grant the motion for summary judgment in part and deny the motion to exclude the expert.

**I.  Background.**

The following facts are undisputed. On March 28, 2014, at 9:41 p.m., Navajo Nation Police Sergeant David Butler observed a pick-up truck run a stop sign in Tuba

City, Arizona. Doc. 109 at 119. Butler activated his emergency lights and siren to initiate a traffic stop, but the truck's driver, Kee Brown, refused to stop. *Id.* Butler soon lost sight of Brown's truck and deactivated his lights and siren. *Id.* At 9:45 p.m., a citizen approached Butler's vehicle and informed him that the same truck was driving erratically and had hit a school yard's fence. *Id.*; Doc. 93-2 at 29-30. When Butler saw Brown again at 9:46 p.m., he reactivated his lights and siren. Doc. 109 at 120. Brown fled in his truck, making his way to the eastbound lane of Highway 160 at milepost 322. Doc. 93-2 at 19.

Brown accelerated to speeds in excess of 100 m.p.h., weaving in and out of traffic. *See id.* at 19-20; Doc. 109 at 19-20. Butler's police truck had a governor that kept it from going faster than 98 m.p.h. Doc. 93-2 at 24-25. Butler testified that he ended his pursuit between mileposts 323 and 327 when he judged that Brown was about 0.75 miles ahead of him and pulling away. Doc. 93-2 at 23. Butler testified that he continued following Brown to monitor his location, and drove as fast as possible with his siren and lights activated. *Id.* at 22-24; Doc. 109 at 35.

The terrain between mileposts 344 and 345 obstructed Butler's view of Brown's taillights. Doc. 93-2 at 35-36. When Butler came around a curve at milepost 345, he decelerated because he saw a vehicle nearby on Indian Route 6011. *Id.* at 36-37. Quickly determining that the vehicle was not Brown's pick-up truck, he accelerated again and continued east on Highway 160. *Id.* at 37. At about 10:03 p.m., Butler arrived at the scene of a vehicle accident near milepost 346.5. *Id.* at 38; Doc. 109 at 33. Brown had crossed into oncoming traffic and caused a head-on collision with the Hirayama van. Doc. 109-3 at 15. Five people died in the accident. Brown, who had a blood-alcohol level of 0.267, was killed along with his passenger. Doc. 109-1 at 25, 32. R.H.'s father, mother, and brother also were killed. *Id.* at 25-26.

## II. Plaintiff's *Daubert* Motion.

Dr. Joseph Peles, Ph.D., is a bioengineer with background and training in accident reconstruction. Doc. 93-2 at 82. Dr. Peles opined about Brown's impact speed, Butler's proximity to the accident when it occurred, the reason for Mr. Hirayama's left-turn maneuver before impact, and the lines of sight for the three vehicles involved. *Id.* at 88-93.

Under Rule 702, an expert may testify on the basis of "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence," provided the testimony rests on "sufficient facts or data" and "reliable principles and methods" and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d). The proponent of expert testimony has the ultimate burden of showing that the expert is qualified and the proposed testimony is admissible under Rule 702. *See Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). The trial court acts as a gatekeeper to assure that expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

Plaintiff challenges Dr. Peles' opinion regarding lines of sight. Doc. 106. Butler testified that he last saw Brown's vehicle between mileposts 344 and 345, yet R.H. testified that her father and brother saw police lights just before impact at milepost 346.5. Doc. 93-2 at 90. Dr. Peles visited the relevant stretch of Highway 160 and concluded that the terrain creates a positioning scenario in which Butler could not see Brown yet the Hirayamas could see Butler. *Id.* at 90-91. Plaintiff does not challenge this conclusion.

Dr. Peles then considered whether the documents, physical evidence, and testimony could support a conclusion that the three vehicles were positioned in that way on the night of the accident. Doc. 93-2 at 91-93. Relying on calculations based on locations, speeds, and rates of deceleration, Dr. Peles concluded that this scenario was possible. *Id.* at 91-92. Such a scenario would mean that Brown could not have seen Butler's emergency lights for at least 56.4 seconds before impact. *Id.* at 92.

Plaintiff does not challenge the relevance of Dr. Peles' opinion or the reliability of his principles and methods. *See* Doc. 106. Plaintiff instead contends that the data on which Dr. Peles relies to calculate his opinion are uncertain or unreliable. *See id.* at 3-6. Defendant counters that these arguments go to the weight of Dr. Peles' opinion, not to its admissibility. Doc. 116 at 5-8.

Plaintiff emphasizes that Dr. Peles lacks evidence that establishes, with certainty, Butler's location when he lost sight of Brown's truck, the specific location where Butler began decelerating, Butler's rates of deceleration, and the distance Butler travelled at 40 m.p.h. Doc. 106 at 3-6. And yet Dr. Peles' assumptions on each of these points find support in the record. Butler testified that he lost sight of Brown near a general store between mileposts 344 and 345 and that he began decelerating at a curve near the intersection with Indian Route 6011. Doc. 93-2 at 35, 85-86; Doc. 106 at 32-33. Dr. Peles acknowledged that identifying a precise rate of deceleration would be impossible, so he used a typical rate of low-friction braking. Doc. 106 at 29-31. And Butler testified that he slowed down for only a few seconds before accelerating again once he passed Indian Route 6011. Doc. 93-2 at 85-86; Doc. 109 at 48-52.

Although the Court might be required analyze the sufficiency of this evidence and the reasonableness of Dr. Peles' assumptions more fully if he was going to testify before a jury, there will be no jury trial in this FTCA case. 28 U.S.C. § 2402; *Brown v. United States*, 993 F.2d 881 (9th Cir. 1993) ("a party bringing an action under the FTCA is not entitled to a jury trial"). Plaintiff does not challenge other opinions of Dr. Peles, so he will testify at trial in any event. The Court will consider the evidence on this specific opinion in detail during the trial and decide whether the opinion of Dr. Peles should be admitted under Rule 702 and, if so, what weight it should receive. The Court will deny Plaintiff's motion to exclude Dr. Peles' opinion before trial.

**III. Summary Judgment Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record]

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**IV. Discussion.**

Plaintiff's complaint contains five counts. Four are brought on behalf of R.H. – wrongful death of R.H.'s father and mother in violation of A.R.S. § 12-611 (Counts One and Two), negligence (Count Four), and negligent infliction of emotional distress (Count Five). Doc. 59 ¶¶ 43-55, 63-73. Count Three is a wrongful death claim brought on behalf of the estate of Yuki Hirayama, R.H.'s brother. *Id.* ¶¶ 56-62. Plaintiff identifies various categories of negligent conduct for each count, including failure to establish and enforce effective policies governing high-risk traffic pursuits, failure to train and supervise Navajo Nation police officers, and improper high-speed chase. *See id.* ¶¶ 43-73. Defendant argues that some of Plaintiff's claims are barred by the discretionary function exception to the FTCA, that Plaintiff has no evidence of negligent supervision, that Plaintiff cannot show proximate cause, that Plaintiff has no evidence against some of the officers named in the complaint, and that Plaintiff has failed to identify R.H.'s economic loss. Doc. 92.

**A. Negligent Failure to Implement Pursuit Policies.**

The FTCA waives the United States' sovereign immunity for claims arising out of torts committed by federal employees acting within the scope of their employment. *See*

28 U.S.C. § 1346(b)(1). In the absence of an applicable exception, *see* 28 U.S.C. § 2680, the United States may be sued for money damages "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1). Defendant argues that the discretionary function exception bars some of Plaintiff's negligence claims. Doc. 92 at 11-12. That exception bars any tort claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The Supreme Court has established a two-part test for determining when the discretionary function exception applies. *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). First, courts ask whether the challenged action was discretionary – whether it involved an element of judgment. *Gonzalez v. United States*, 814 F.3d 1022, 1027 (9th Cir. 2016). This part of the test is not satisfied if a "federal statute, regulation, or policy specifically prescribes a course of action for any employee to follow." *Berkovitz*, 486 U.S. at 536. Second, if there is room for judgment, courts determine whether the judgment is of a kind that the exception was designed to protect. *Id.*

Defendant argues that two of Plaintiff's negligence claims – asserted in each of the five counts – are subject to the discretionary function exception and therefore cannot give rise to liability under the FTCA. These are Plaintiff's claims that Defendant "[f]ailed to have safe and/or appropriate policies in place governing pursuit and apprehension of motorists by the Navajo Nation Police," and "[f]ailed to implement and enforce Navajo Nation Police Department policies and procedures in effect governing pursuit and apprehension of motorists by the Navajo Nation Police Department." Doc. 57, ¶¶ 44(j)-(k); 51(j)-(k); 58(j)-(k); 65(j)-(k); 69(j)-(k).

Defendant asserts that the first part of the discretionary function test is satisfied because the establishment and enforcement of pursuit policies involves judgment, and there is no federal statute, regulation, or policy that specifically prescribes a course of

action for implementing such policies. Doc. 92 at 11. Plaintiff's expert admitted that he knows of no such federal requirement (Doc. 97 at 56), and Plaintiff fails to address this issue in her response. Plaintiff does not dispute that the implementation of a pursuit policy involves judgment, and does not identify any federal requirement that limited Defendant's discretion when establishing and implementing pursuit policies.

Defendant argues that the second part of the discretionary function exception is also satisfied, noting that courts have held that law enforcement policy decisions are covered by the exception. *See Horta v. Sullivan*, 4 F.3d 2, 21 (1st Cir. 1993) ("although law enforcement agents have a mandatory duty to enforce the law, decisions as to how best to fulfill that duty are protected by the discretionary function exception to the FTCA"); *Smith ex rel Fitzsimmons v. United States*, 496 F. Supp. 2d 1035, 1040-42 (D.N.D. 2007) (BIA officers' conduct in prioritizing enforcement of tribal laws involved element of judgment, satisfying the discretionary function exception's first element). This includes the implementation of policies. *See Ga. Cas. Sur. Co. v. United States*, 823 F.2d 260, 263 (8th Cir.1987) ("the means chosen by the Government to enforce the law are protected by the discretionary function exception"); *McElroy v. United States*, 861 F.Supp. 585, 591 (W.D. Tex. 1994) ("because it is the mandatory duty of law enforcement agents to enforce the law, decisions as to how best fulfill that duty are protected by the discretionary function exception"). Plaintiff fails to address this argument in her response.

Plaintiff seems to respond to an argument Defendant does not make. She asserts that the discretionary function exception "does not shield the conduct of an employee who violates a mandatory policy or directive." Doc. 108 at 11. She then focuses on the conduct of Sergeant Butler during the pursuit and argues that he failed to comply with the pursuit policy established by the Arizona Peace Officers Standards and Training Board, also known as AZPOST. *Id.* at 12-13. But this portion of Defendant's summary judgment motion is not directed at the conduct of the officer; it is directed at Plaintiff's allegation that the United States failed to establish and enforce a pursuit policy. Because

Plaintiff provides no response to that argument, and Defendant's cases and evidence support the argument, the Court will grant summary judgment on Plaintiff's claims that Defendant failed to establish and enforce appropriate pursuit and apprehension policies. *See* Doc. 57, ¶¶ 44(j)-(k); 51(j)-(k); 58(j)-(k); 65(j)-(k); 69(j)-(k). Such allegations fall within the discretionary function exception.[1]

### B. Negligent Failure to Train and Supervise.

Plaintiff alleges in each count that Defendant "[f]ailed to properly train and supervise Tribal Police . . . in the proper conduct of police pursuit." *See* Doc. 57, ¶¶ 44(f); 51(f); 58(f); 65(f); 69(f). To hold an employer liable for negligent supervision, a plaintiff must establish "(1) that the employer knew or should have known that the employee was not competent to perform the assigned task, and (2) that the employer's failure to supervise the employee caused the plaintiff's injury." *Sloan v. United States*, CV-16-8059-PCT-DGC, 2016 WL 3548766, *2 (D. Ariz. June 30, 2016). Defendant argues that Plaintiff has presented no evidence that Sergeant Butler's training was insufficient, that he had not completed his training, that he had engaged in an improper pursuit before, that he had engaged in any prior misconduct, that he had received any discipline, or even that he had been cited for traffic violations. Doc. 92 at 12. Plaintiff does not address this argument, and her expert has no evidence that Butler failed to receive any training, was inadequately supervised, or previously engaged in any improper pursuit or misconduct. Docs. 93, ¶¶ 71-73; 107, ¶¶ 71-73. The expert also conceded that he has no opinion on the negligent training or supervision issue. Docs. 93, ¶ 69; 107, ¶ 69. Because Plaintiff has not responded to Defendant's argument on the negligent supervisions claim, the Court will grant summary judgment on that claim. *See* Doc. 57, ¶¶ 44(f); 51(f); 58(f); 65(f); 69(f). As noted above, summary judgment may be entered against a party who "fails to make a showing sufficient to establish the existence of an

---

[1] The Court need not address Defendant's separate argument that Plaintiff cannot show that an alleged failure to have and implement effective policies caused the accident. Doc. 92 at 13.

- 8 -

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.[2]

### C. Causation.

All of Plaintiff's claims require a showing of causation. *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 828 (Ariz. 2018) (negligence claim requires a showing of causation); *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007) (wrongful death action based on negligence requires a showing of causation); *Rodriguez v. Fox News Network, L.L.C.*, 356 P.3d 322, 325 (Ariz. Ct. App. 2015) (negligent infliction of emotional distress requires a showing that the defendant's conduct *created* an unreasonable risk of bodily harm). The causation requirement encompasses both actual and proximate cause, *Glaze v. Larsen*, 83 P.3d 26, 29 (Ariz. 2004), and presents factual issues usually decided by the trier of fact, *Gipson*, 150 P.3d at 230; *see also Ontiveros v. Borak*, 667 P.2d 200, 208 (Ariz. 1983) (the issue of causation "should ordinarily be a question of fact for the jury under usual principles of Arizona tort law"). Defendant offers several reasons the Court should enter summary judgment on causation.

#### 1. Actual Cause.

"Actual" or "but for" cause "exists if the defendant's act helped cause the final result and if that result would not have happened without the defendant's act." *Ontiveros*, 667 P.2d at 205. Defendant's act "need not have been a 'large' or 'abundant' cause of the final result." *Id.*

Defendant contends that Plaintiff cannot show actual causation because there is no evidence that Brown ever saw Butler's emergency lights. Doc. 92 at 4. Defendant emphasizes that there is no evidence that Brown's vehicle, which was destroyed in the accident, had rearview mirrors that would allow him to see a following police vehicle. *Id.* Plaintiff responds that it is common knowledge that Ford pickup trucks like Brown's are manufactured with rearview mirrors, and that Brown's awareness that Butler was

---

[2] The Court need not address Defendant's argument that the discretionary function exception bars Plaintiff's negligent training and supervision claims. Doc. 92 at 10-11.

- 9 -

pursuing him can be inferred from Brown's increased speed and weaving through traffic on Highway 160 after Butler activated his lights and siren and began the pursuit. Doc. 108 at 7-10. Plaintiff also presents testimony from Defendant's police procedures expert, William Katsaris, that Brown should have been on notice of the police pursuit given that Butler followed him with his lights and siren activated for approximately 24 miles. *Id.* at 10 (citing Doc. 110 at 33-36). Viewed in the light most favorable to Plaintiff, this is a factual dispute that must be resolved at trial.

Defendant next argues that Plaintiff cannot show actual causation because she lacks evidence about Brown's mental state at the time of the accident. Doc. 92 at 4-5. Defendant emphasizes that Plaintiff cannot present testimony from Brown or his passenger, both of whom died in the crash, and has not sought testimony from Brown's family. *Id.* at 5. Defendant suggests that maliciousness, suicide, or mental illness might have caused Brown to cross into oncoming traffic. *Id.* at 9. But Defendant bears the initial burden of "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," *Celotex Corp.*, 477 U.S. at 323, and has identified no evidence to suggest that maliciousness, suicide, or mental illness caused this accident. On the other hand, Plaintiff presents evidence that an allegedly negligent police pursuit caused a drunk driver to flee and, eventually, crash into the Hirayama van. Plaintiff need not establish that Defendant's negligence was the sole or primary cause of the accident, *Ontiveros*, 667 P.2d at 205, and her evidence creates a question of fact on actual causation.

Defendant finally contends that Plaintiff cannot show actual cause because there is no evidence that terminating the pursuit would have prevented the accident. Doc. 92 at 5-6. The evidence creates a genuine dispute of fact on this issue. Defendant emphasizes that (1) Brown continued to drive recklessly when he hit a fence in Tuba City after Sergeant Butler terminated the first pursuit, (2) Brown was intoxicated and not thinking rationally, and (3) Dr. Kirkham cannot rely on Geoffrey Alpert's study to conclude that Brown would have reacted by driving more safely. Doc. 92 at 5-8.

Dr. Kirkham quotes the Alpert study for the proposition that "[m]ore than 70% of captured suspects said that they would have slowed down 'when I felt safe[.]'" Doc. 112 at 10. Although Alpert explained that it would be error to rely "solely" on his data to infer how Brown would have reacted to a terminated police chase (Doc. 101 at 6), a trier of fact need not rely on Alpert's study alone. The record reflects evidence of Brown's acceleration in response to attempts to pull him over, Dr. Kirham's opinion that police generally "spur[] on reckless driving by giving chase" (Doc. 112 at 11), Dr. Kirkham's opinion that Butler's pursuit was "a significant and proximate cause" of the accident (*id.* at 10), and a Bureau of Indian Affairs policy that may reflect a recognition that terminated pursuits can improve public safety (*see* Doc. 93-2 at 6). The Court's function at summary judgment is not to weigh the evidence, but to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence creates a genuine issue on whether terminating the pursuit would have prevented the accident.

Defendant's reliance on *Scott v. Harris*, 550 U.S. 372 (2007), is misplaced. Doc. 92 at 7. *Scott* did not address proximate cause. Rather, it considered whether an officer's use of a precision intervention technique ("PIT") maneuver to stop a fleeing suspect was reasonable under the Fourth Amendment. 550 U.S. at 381. The officer argued that the PIT maneuver was justified to eliminate the risk to other motorists, pedestrians, and his colleagues by the suspect's reckless driving. *Id.* at 383-84. The suspect countered that simply ceasing the pursuit was a more reasonable way to achieve that goal, but the Supreme Court held that "[t]he police need not have taken that chance and hoped for the best." *Id.* at 385. Whereas the PIT maneuver "was certain to eliminate the risk," it was uncertain how the suspect would respond to a terminated pursuit. *Id.* Given this uncertainty, the Court concluded that it was reasonable for the officer to employ the PIT maneuver. *Id. Scott*'s finding of uncertainty in how a fleeing suspect would respond to a terminated pursuit does not support Defendant's argument that Brown definitely would have slowed down if Butler turned off his lights and siren.

### 2. Proximate Cause.

"The proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by an efficient intervening cause, produces an injury, and without which the injury would not have occurred." *Robertson v. Sixpence Inns of Am., Inc.*, 789 P.2d 1040, 1047 (Ariz. 1990). "An original actor may be relieved from liability for 'the final result when, and only when, an intervening act of another was unforeseeable by a reasonable person in the position of the original actor[.]'" *McMurtry v. Weatherford Hotel, Inc.*, 293 P.3d 520, 532 (Ariz. Ct. App. 2013).

Defendant argues that the topography of Highway 160 was an intervening circumstance that broke the chain of causation. Doc. 92 at 3-4. The relevant stretch of the highway near the accident includes a sharp curve and steep downgrade that might obstruct a driver's line of sight. Doc. 93-2 at 90. Defendant offers expert opinion that the terrain made Butler's emergency lights invisible to Brown for 56.4 seconds before the accident. Doc. 93-2 at 92. Defendant argues that this was sufficient time for a reasonable driver to conclude that the police pursuit had ended, thus eliminating any causal connection between Butler's pursuit and the accident. Doc. 92 at 3-4. Plaintiff counters that this argument depends on the accuracy of Dr. Peles' opinion that such a scenario was possible. Doc. 108 at 3-7. Because Dr. Peles' calculations are based on assumptions that may be inaccurate, Plaintiff argues, there are disputes of fact that prevent the entry of summary judgment on this issue. *Id.*

The Court agrees with Plaintiff. As discussed above, Plaintiff has identified reasons to question Dr. Peles' opinion that Brown lost sight of Butler for the last 56.4 seconds of the pursuit. And Plaintiff offers an expert opinion that directly contradicts Dr. Peles. *See* 109-4 at 8 ("the occupants of both the Brown vehicle and the Hirayama vehicle would have been able to see Sgt. Butler's emergency lights on the same stretch leading up to the accident"). This evidence creates a dispute of fact as to whether Brown was able to see Butler's lights in the last minute before the accident.

Moreover, even if Brown was unable to see Butler's lights for 56.4 seconds, Defendant has not established that this would entitled it to judgment as a matter of law. At this point in the pursuit Butler had followed Brown at maximum speed with his lights and siren activated for approximately 24 miles. Whether a one-minute interruption in the pursuit would have caused Brown to relax and conclude that the pursuit was over is itself a question of fact that must be resolved at trial.

### D. Conduct of Other Officers.

Defendant notes that Plaintiff's expert criticizes only Butler's conduct, and asks the Court to "grant summary judgment on Plaintiffs' allegations in the Amended Complaint stated against all other officers." Doc. 92 at 2 n.1. Defendant cites paragraphs of Plaintiff's complaint which name Officers Yellow, Yazzie, Tsosie, Todecheenee, Sombrero, and Billison. *See id*.; Doc. 59, ¶ 39. Defendant also identifies these officers in its statement of fact and asserts that Plaintiff's expert has no criticism of their conduct. Doc. 93, ¶ 57. Plaintiff admits that her expert has no opinion on the conduct of these officers. Doc, 107, ¶ 57.

In responding to the motion for summary judgment, however, Plaintiff presents evidence that Officer Yellow was part of the high-speed pursuit of Brown that allegedly led to the accident, and that she pursued with her lights and siren activated. *See* Docs. 107, ¶¶ 105-106; 108 at 3, 7. Plaintiff's expert opines that this high-speed pursuit caused the accident. This evidence raises a question of fact on whether Officer Yellow's conduct caused or contributed to the accident, as discussed above.

But Plaintiff responds with no evidence suggesting that Officers Yazzie, Tsosie, Todecheenee, Sombrero, or Billison were negligent, or that their actions caused the accident. The Court will enter summary judgment on the portion of Plaintiff's claims based on the conduct of these officers. *See* Rule 56(a) (summary judgment may be entered on "part of each claim"); *Celotex*, 477 U.S. at 322.

## E. Damages.

Defendant seeks summary judgment on the alleged economic losses associated with the wrongful death claims asserted in Counts One and Two. Doc. 92 at 14-15. Arizona law permits a "fair and just" recovery in a wrongful death action, "which may include the decedent's prospective earning capacity; the loss of companionship, comfort, and guidance caused by the death; and the survivor's emotional suffering, but not the decedent's own pain and suffering." *Walsh v. Advanced Cardiac Specialists Chartered*, 273 P.3d 645, 648 (Ariz. 2012); *see also* A.R.S. § 12-613; *Krause v. Cty. of Mohave*, No. CV-17-08185-PCT-JJT, 2018 WL 1729343, at *2 n.2 (D. Ariz. Apr. 10, 2018); *Coulbourn v. Air & Liquid Sys. Corp.*, No. CV-13-08141-PCT-SRB, 2016 WL 5921255, at *2 (D. Ariz. Jan. 6, 2016). Plaintiff has presented an expert opinion regarding the prospective earning capacity of R.H.'s now-deceased father. *See* Doc. 114-1.

Defendant contends that Plaintiff's economic loss evidence is insufficient because it focuses on the lost income potential of R.H.'s father. Doc. 92 at 14-15. Defendant asserts that R.H. "may only recover the value of the economic support her father would have provided her [until] she reached majority less what she is currently receiving." *Id.* at 15. But this claim is not necessarily supported by the authorities Defendant cites. The recommended jury instructions permit recovery of "[t]he income and services that have already been lost as a result of the death, and that are reasonably probable to be lost in the future." Revised Ariz. Jury Instructions (Civil), 6th, Personal Injury Damages 3 (July 2013). And *Gandy v. United States*, 437 F. Supp. 2d 1085 (D. Ariz. 2006), addressed a plaintiff's attempt to secure the decedent's prospective earning capacity on two separate claims: a survival action under A.R.S. § 14-3110 and a wrongful death action under A.R.S. § 12-611. *Id.* at 1086. Reasoning that the decedent's loss of future income "is recoverable under Arizona's wrongful death statute," *Gandy* limited recovery for the separate survival claim to the decedent's lost income between her injury and death. *Id.* at 1088-89 (citation omitted). The court did so "to protect against potential double

recovery." *Id.* at 1089. Defendant cites no case that limits economic loss damages in the way Defendant asserts. The Court will deny summary judgment on this issue.[3]

Defendant also seeks summary judgment on Count Three, arguing that R.H. cannot recover damages for the wrongful death of her brother, Yuki Hirayama. Doc. 92 at 16. Because Yuki has no surviving parents, spouse, or children, his estate is the only permissible plaintiff in a wrongful death claim. *See* A.R.S. § 12-612(A). Plaintiff complies with this requirement. Count Three is a wrongful death action brought by Plaintiff as administrator of Yuki's estate and on behalf of the estate. Doc. 59 ¶¶ 56-62. The claim is not brought on behalf of R.H. *Id.*

## V. Motions to Strike.

Plaintiff filed motions to strike two declarations offered in support of Defendant's summary judgment motion, contending that Defendant failed to disclose Charles Addington or Geoffrey Alpert as witnesses. Docs. 104, 105.[4] The Court will deny these motions as moot as these declarations had no effect on the Court's ruling.

**IT IS ORDERED**:

1. Defendant's motion for summary judgment (Doc. 92) is **granted in part** and **denied in part**. All five causes of action remain in the case, but the Court grants summary judgment to Defendant on the part of each count based on (1) negligent failure to establish and enforce effective pursuit policies, (2) negligent failure to train and supervise, and (3) actions of Officers Yazzie, Tsosie, Todecheenee, Sombrero, or Billison.

2. Plaintiff's motion to exclude testimony of Dr. Peles (Doc. 106) is **denied**.

3. Plaintiff's motions to strike declarations (Docs. 104, 105) are **denied**.

---

[3] The Court notes, however, that this issue warrants further discussion and possibly briefing in connection with the proposed conclusions of law. It seems highly unlikely that R.H. would have received all of the income her father earned had the accident not occurred, and that her actual losses are limited to the portion of his income that he would have devoted to her support. Because there will be no jury, the Court and the parties can explore this issue more fully at trial, but experts will be limited to the opinions they properly disclosed during discovery.

[4] Plaintiff did not comply with Local Rule 7.2(m)(2).

- 15 -

4. The Court will hold a telephone conference with the parties to set the trial and final pretrial conference dates on **September 24, 2018 at 4:30 p.m.** Counsel for Plaintiff shall initiate the call to include counsel for all parties and the Court. If a dial-in number is to be used, counsel for Plaintiff shall circulate the dial-in information no later than September 21, 2018 at 12:00 noon.

Dated this 17th day of September, 2018.

*David G. Campbell*

David G. Campbell
Senior United States District Judge